ACCEPTED
04-15-00433-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/17/2015 10:20:01 AM
KEITH HOTTLE
CLERK

No. 04-15-00433-CV

# In the Court of Appeals
# for the Fourth Judicial District
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/17/2015 10:20:01 AM
KEITH E. HOTTLE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY;
POST OAK CLEAN GREEN, INC.,

*Appellants*,

*v.*

GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT,

*Appellee.*

On Appeal from the
2nd 25th Judicial District Court, Guadalupe County

## OPENING BRIEF OF APPELLANT
## TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1896
Fax: (512) 370-9191

SCOTT A. KELLER
Solicitor General

BILL DAVIS
Assistant Solicitor General
State Bar No. 24028280
Bill.Davis@texasattorneygeneral.gov

NANCY ELIZABETH OLINGER
CYNTHIA WOELK
Assistant Attorneys General

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

*Appellant*

Texas Commission on Environmental Quality ("the Commission" or "TCEQ")

*Counsel for the Commission*

*Lead Appellate Counsel*
Bill Davis
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Bill.Davis@texasattorneygeneral.gov

*Additional Appellate and Trial Counsel*
Nancy Elizabeth Olinger
Cynthia Woelk
Mark Walters (trial court only)*
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 066)
Austin, Texas 78711-2548

*Additional Trial Counsel*
David Preister
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 066)
Austin, Texas 78711-2548

*Appellant*

Post Oak Clean Green, Inc. ("Post Oak")

*Counsel for Post Oak*

*Lead Appellate Counsel*
Christopher Dodson
BRACEWELL & GIULIANI
711 Louisiana St., Suite 2300
Houston, Texas 77002
chris.dodson@bgllp.com

*Additional Appellate and Trial Counsel*
John A. Riley
JACKSON, GILMOUR & DOBBS, PC
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
jriley@jgdpc.com

---

\* Mark Walters is no longer with the Office of the Attorney General.

*Counsel for Post Oak (continued)*
*Additional Trial Counsel*

Robert D. Ayers
Kelley L. Clark
BRACEWELL & GIULIANI
711 Louisiana St., Suite 2300
Houston, Texas 77002

Peter J. Stanton
LAW OFFICES OF PETER J. STANTON
111 Soledad, Suite 1350
Riverview Towers
San Antonio, Texas 782025

*Appellee*
Guadalupe County Groundwater Conservation District ("the District")

*Counsel for the District*
Marisa Perales
FREDERICK, PERALES, ALLMON &
   ROCKWELL, P.C.
707 Rio Grande, Suite 200
Austin, Texas 78701
marisa@LF-Lawfirm.com

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................ i

Index of Authorities .......................................................................................... iii

Record References ............................................................................................ xi

Statement of the Case ....................................................................................... xi

Statement Regarding Oral Argument ...................................................................... xii

Issues Presented ............................................................................................. xii

Introduction ..................................................................................................... 1

Statement of Facts ............................................................................................. 2

    I.   The Parties .............................................................................................. 2

    II.  Statutory And Regulatory Background ........................................................ 3

        A.  The Commission's Authority .............................................................. 3

        B.  The District's Authority ..................................................................... 7

    III. Post Oak's Application For A Landfill Permit ............................................. 14

    IV. Trial Court Proceedings ......................................................................... 15

Summary of the Argument .................................................................................. 19

Standard and Scope of Review ............................................................................ 21

Argument ........................................................................................................ 22

    I.   The District's Substantive Claim Is Not Ripe, And It Is Impermissibly Redundant Of A Suit For Judicial Review ................................................... 22

    II.  Because It Did Not Allege A Redressable Injury, The District Lacks Standing To Sue. ..................................................................................... 31

    III. The District's Substantive Claim Is Barred Under The Doctrine Of Exclusive (Or, Alternatively, Primary) Jurisdiction. ..................................... 36

Prayer ............................................................................................................ 45

Certificate of Service ........................................................................................ 46

Certificate of Compliance ................................................................................... 46

Appendix: Order on the Commission's Plea to the Jurisdiction

# INDEX OF AUTHORITIES

**Cases**

*Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848 (Tex. App.—Austin 2009, no pet.) ...............................................................................37

*Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161 (Tex. App.—Austin 2013, no pet.) .............................................................................31

*Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)..................................................................23

*Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674 (Tex. 2006) ...................38

*Bonham State Bank v. Beadle*, 907 S.W.2d 465 (Tex. 1995).............................. 23, 32

*Brown v. Todd*, 53 S.W.3d 297 (Tex. 2001) ....................................................... 31, 32

*Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000) .....................36, 38–39

*Cervantes v. N.H. Ins. Co.*, No. 04-12-00722-CV, 2013 WL 3486824 (Tex. App.—San Antonio July 10, 2013, pet. denied) (mem. op.) .......................26, 28

*City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747 (Tex. App.—San Antonio 2005, no pet.)................................................................. 22, 26, 38

*City of Shavano Park v. Ard Mor, Inc.*, No. 04-14-00781-CV, 2015 WL 4554524 (Tex. App.—San Antonio July 29, 2015, no pet. h.) (mem. op.) ........31

*DPS v. Deputy Sheriff's Ass'n of Bexar Cnty.*, No. 04-07-00233-CV, 2007 WL 3355626 (Tex. App.—San Antonio Nov. 14, 2007, pet. denied) (mem. op.) ............................................................................... 22, 24, 25, 29

*Edwards Aquifer Auth. v. Bragg*, 21 S.W.3d 375 (Tex. App.—San Antonio 2000), *aff'd*, 71 S.W.3d 729 (Tex. 2002)....................................................... 24

*Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814 (Tex. 2012)..................................... 9

*Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825 (Tex. App.—Austin 2010, no pet.).............................................................................32

*Grand Lodge of the Order of the Sons of Hermann in Tex. v. Curry*, 108 S.W.2d 574 (Tex. Civ. App.—San Antonio 1937, writ ref'd)........................................35

*Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conserv'n Dist. No. 1*, 263 S.W.3d 910 (Tex. 2008) ....................................................... 9

*Hardee v. City of San Antonio*, No. 04-07-00740-CV, 2008 WL 2116251 (Tex. App.—San Antonio May 21, 2008, no pet.) (mem. op.)...................... 23, 25, 32

*Heckman v. Williamson County*, 369 S.W.3d 137 (Tex. 2012) ........................... 31, 32

*In re Crawford & Co.*, 458 S.W.3d 920 (Tex. 2015) .................................... 37, 38, 40

*In re Entergy Corp.*, 142 S.W.3d 316 (Tex. 2004) ...................................................37

*In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400 (Tex. 2007) ..............................................39

*In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619 (Tex. 2007) .................................38, 42

*Janek v. Gonzalez*, No. 03-11-00113-CV, 2013 WL 1748795 (Tex. App.—
Austin Apr. 17, 2013, no pet.) (mem. op.) .......................................................37

*Juliff Gardens, L.L.C. v. TCEQ*, 131 S.W.3d 271 (Tex. App.—Austin 2004,
no pet.) ........................................................................................... 40

*Kelly v. Harris*, 331 F.3d 817 (11th Cir. 2003)........................................................32

*Kinney Cnty. Groundwater Conserv'n Dist. v. Boulware*, 238 S.W.3d 452 (Tex.
App.—San Antonio 2007, no pet.) .................................................. 22

*Kinney v. Palmer*, No. 04-07-00091-CV, 2008 WL 2515696 (Tex. App.—San
Antonio June 25, 2008, no pet.) (mem. op.).........................................................34

*Kuntz v. Khan*, No. 03-10-00160-CV, 2011 WL 182882 (Tex. App.—Austin
Jan. 21, 2011, no pet.) (mem. op.) .....................................................................26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 31

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex. 1998)..................................23

*McDaniel v. Tex. Natural Res. Conserv'n Comm'n*, 982 S.W.2d 650 (Tex.
App.—Austin 1998, pet. denied) .................................................. 40

*Patel v. Tex. Dep't of Licensing & Regulation*, No. 12–0657, 2015 WL 3982687
(Tex. June 26, 2015) ................................................................. 21, 26, 28

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439
(Tex. 1998) .........................................................................................22, 23

*Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447 (Tex. 2008) .......................35

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ...........................................19

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012) ........................................... 22

*Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674 (Tex. App.—
Austin 2004, no pet.)........................................................................... 25, 26, 29

*Sipriano v. Great Spring Waters of Am., Inc.*, 1 S.W.3d 75 (Tex. 1999)....................... 9

*Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252 (Tex. App.—Austin
1994, pet. withdrawn) ....................................................................... 40

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex.
2002) .....................................................................................22, 36, 37, 39

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993).................. 22

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) .................21

*Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006).............................................36–37, 38

*Waco ISD v. Gibson*, 22 S.W.3d 849 (Tex. 2000) ............................................22–23

*Warth v. Seldin*, 422 U.S. 490 (1975)................................................. 31, 32

*Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906 (Tex. App.—Austin 1998, pet. denied) ..................................................................26

**Constitutional Provisions, Statutes, and Session Laws**

Tex. Const. art. XVI, § 59 ........................................................... 2, 8, 12

Tex. Civ. Prac. & Rem. Code:

ch. 37 ...................................................................................xi, 26

§ 51.014(a)(8) .......................................................................xi, 18

Tex. Gov't Code:

§ 2001.003(4) .............................................................................17

§ 2001.003(5) .............................................................................17

§ 2001.051 ..................................................................................17

§ 2001.145 ..................................................................................17

Tex. Health & Safety Code:

ch. 361 ......................................1, 4, 16, 17, 20, 30, 40, 41, 44

§ 361.002 ..................................................................................... 4

§ 361.003(17) .............................................................................36

§ 361.011(a)–(c) ......................................................................... 4

§ 361.011(d) ............................................................................... 4

§ 361.024(a)............................................................................... 6

§ 361.026(1) ............................................................................... 4

§ 361.039 ....................................................................................35

§ 361.061.................................................................................2, 5

§ 361.0641................................................................................5, 42

§ 361.067 .................................................................................5, 42

§ 361.068 .....................................................................................5

§ 361.069 .....................................................................................5

§ 361.081(a) ................................................................................5

§ 361.083(a)............................................................................5, 42

§ 361.089(a)............................................................................... 6

§ 361.095 ................................................................................... 44

§ 361.151...................................................................................4, 44

§ 361.151(c)................................................................................ 44

§ 361.154....................................................................................43

§ 361.154(a) ............................................................................... 44

§ 361.154(b) ............................................................... 44

§ 361.161 ................................................................... 43

§ 361.165(a) ...............................................................36

§ 361.321 ...............................................................17, 19

§ 363.022–.046 ........................................................... 4

§ 363.062–.063 ........................................................... 4

§ 363.092 ................................................................... 4

§ 363.112(a) ............................................................. 11

§ 363.112(d) ..........................................................11, 12

§ 364.012(a) .............................................................12

§ 364.012(b) .............................................................12

§ 364.012(f) .............................................................12

Texas Hum. Res. Code:

§ 33.0006 ..................................................................37

§ 33.002 ....................................................................37

Tex. Labor Code § 402.001 ..............................................37

Tex. Spec. Dist. Code:

§ 8833.002 ...............................................................2, 8

§ 8833.101 ............................................................2, 8, 12

§ 8833.102 ................................................................. 2

§ 9009.101 ................................................................12

Tex. Util. Code § 31.001(a) ..............................................37

Tex. Water Code:

§ 5.012 ...................................................................... 2

§ 5.351 ......................................................................17

§ 7.302(b) .................................................................. 6

§ 26.0136 ...............................................................3, 41

§ 26.023 .................................................................3, 41

§ 26.121(a)(1) .............................................................5

§ 26.127(a) ..................................................................3

§ 26.403(a)–(c) .............................................................3

§ 26.405(1) .................................................................3

§ 27.003 ......................................................................3

§ 27.011 ......................................................................3

§ 28.031(a)(3) .............................................................3

ch. 36 ..........................................................2, 8, 12, 30

§ 36.001(1) ................................................................. 9

§ 36.001(2) ................................................................. 8

vii

§ 36.001(8)(E) ..................................................................................8–9

§ 36.0015 ..................................................................................................9

§ 36.011(b) ...............................................................................................8

§ 36.101(a) .........................................................................................9, 10

§ 36.101–.102 ..........................................................................................9

§ 36.1071(a) .............................................................................................9

§ 36.1071(d) ............................................................................................8

§ 36.113(a) .............................................................................................11

§ 36.113(c)(3) ........................................................................................11

§ 36.113(c)(4) ........................................................................................11

§ 36.113(c)(7) ........................................................................................11

§ 36.1132 ...............................................................................................11

§ 36.116 ..................................................................................................10

§ 36.116(a) .............................................................................................10

§ 36.116(a)(1) ........................................................................................10

§ 36.116(a)(2) ........................................................................................10

§ 36.120 ...................................................................................................8

§ 36.301–.303 ..........................................................................................8

§ 36.304 ...................................................................................................8

ch. 49 ........................................................................................2, 7, 12, 30

§ 49.001(a)(1) ..........................................................................................8

§ 49.002 ...................................................................................................8

§ 49.066(a) ...............................................................................................8

§ 49.181(a) ...............................................................................................8

§ 49.182(a) ...............................................................................................8

§ 49.231(c) ...............................................................................................8

§ 49.456(a) ...............................................................................................8

ch. 51 .................................................................................................12, 30

§ 51.121(c) .............................................................................................12

§ 51.121(b)(6) ........................................................................................12

Act of May 28, 2001, 77th Leg., R.S., ch. 1164, § 1, 2001 Tex. Gen. Laws
2627 .........................................................................................................10

Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01(a)(1), 2001 Tex. Gen.
Laws 1933 ................................................................................................ 2

Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.44, 2.50, 2001 Tex. Gen.
Laws 1991 ...............................................................................................10

Act of May 26, 1999, 76th Leg., R.S., ch. 1141, § 1, 1999 Tex. Gen. Laws
4035 .......................................................................................................... 2

Act of May 29, 1997, 75th Leg., R.S., ch. 1066, §§ 3, 5, 1997 Tex. Gen. Laws 4059................................................................................ 12, 36
Act of May 30, 1993, 73d Leg., R.S., ch. 626, §§ 1.02, 1.08, 1993 Tex. Gen. Laws 2350.........................................................................12

## Rules

30 Tex. Admin. Code:

§§ 39.401–.425 ................................................................5
§ 80.109(a) ...................................................................17
§ 80.109(b)(5)...............................................................17
§ 293.3(a) .....................................................................8
§ 293.22(a) ...................................................................8
ch. 330 .........................................................................6
§ 330.3(88)–(90).............................................................2
§ 330.3(140)...............................................................6, 42
§ 330.3(148)(A) ............................................................14
§ 330.3(175) ..................................................................3
§ 330.5(a) ....................................................................14
§ 330.5(a)(1) .................................................................2
§ 330.23......................................................................12
§ 330.23(d) ..................................................................12
§§ 330.57–.65 ................................................................6
§ 330.61(b)(1) ..............................................................44
§ 330.61(c)(2) ................................................................6
§ 330.61(d)(3) ...............................................................6
§ 330.61(j)(1)–(4)...........................................................6
§ 330.61(k)(1) ................................................................6
§ 330.61(k)(3) ................................................................6
§ 330.63(a)................................................................6, 42
§ 330.63(b)(4)...............................................................7
§ 330.63(c)(1) ...............................................................7
§ 330.63(c)(2) ...............................................................7
§ 330.63(d)(1)(B) ..........................................................7
§ 330.63(e)....................................................................7
§ 330.63(f) ...................................................................7
§ 330.63(f)(3)................................................................7
§ 330.171(c)(6).............................................................14
§ 330.401(a)..................................................................7

§ 330.401(b) ....................................................................................7
§ 330.401(e)....................................................................................7
§ 330.401(f) ....................................................................................7
§ 330.403 .......................................................................................7
§ 330.405(a) ...................................................................................7
§ 330.407 .......................................................................................7
§ 330.407(c)(3) ..............................................................................7
§ 330.421 .......................................................................................7
§ 330.463(a)(2) ..............................................................................7
§ 330.549(a) ................................................................................13
Guadalupe County Groundwater Conservation District Rules:
    R. 1.1(ii)(5) ................................................................................ 9
    R. 1.1–10.6 ...............................................................................13
    R. 5.1–5.10 ..........................................................................11, 14
    R. 8.1 .................xi, 13, 15, 16, 17, 19, 20, 27, 29, 30, 32, 33, 34, 35, 36, 41, 42, 43

**Other Authorities**

13A Wright et al., Federal Practice and Procedure, § 3532.1 (2d ed. 1984) ............23
Enrolled Bill Summary, Tex. H.B. 3037, 77th Leg., R.S. (2001) ............................10
House Comm. on Natural Resources, Bill Analysis, Tex. H.B. 3037, 77th
    Leg., R.S. (2001).......................................................................................10
Nichol, *Ripeness and the Constitution*, 54 U. Chi. L. Rev. 153 (1987) ..................... 24
Op. Tex. Atty. Gen. No. GA-1011 (2013) .............................................................30
Texas Commission on Environmental Quality, Priority Groundwater
    Management Areas and Groundwater Conservation Districts: Report to
    the 84th Texas Legislature, SFR-053/09 (Jan. 2015) ......................................10

## RECORD REFERENCES

In this brief, "CR" refers to the clerk's record; "1.RR" to the reporter's record of November 4, 2014; and "2.RR" to the reporter's record of June 23, 2015.

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case*: | This is an interlocutory appeal from an order denying a governmental unit's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). |
| *Course of Proceedings*: | The District sued Post Oak under the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code ch. 37, seeking a declaration that Post Oak had violated District Rule 8.1 in connection with its pending application for a permit from the Commission for a landfill that, if permitted, would be located within the District's territory. CR.1193–1204 (live petition). The Commission intervened, CR.1045–48, and both it and Post Oak filed pleas to the jurisdiction. CR.15–23, 1081–1132. The District moved for partial summary judgment. CR.552–765. |
| *Trial Court*: | 2nd 25th Judicial District Court, Guadalupe County The Honorable W.C. Kirkendall |
| *Trial Court Disposition*: | The trial court denied both jurisdictional pleas and granted the District's motion for partial summary judgment. CR.548–51, 1179–92, 1218. The Commission and Post Oak each timely appealed the denial of the Commission's plea. CR.1223–25, 1228–31. |

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the boundaries of two governmental entities' authority, a large number of statutes and rules, and several distinct jurisdictional principles. In the Commission's view, this array of factors suggests that oral argument is warranted and would aid the Court's decisional process.

## ISSUES PRESENTED

The District complains of Post Oak's failure to provide formal notice of its application with the Commission for a landfill permit and seeks a declaration that the proposed landfill could not operate consistent with a District rule. But the District received actual notice of Post Oak's application, and it submitted comments on that application to the Commission—the state agency empowered to make landfill-permitting decisions after considering the views of interested parties. The Commission has not yet issued, and may never issue, an order granting Post Oak a permit. If it does, the District could challenge that final order on judicial review. The issues presented are:

1. Whether the District's substantive declaratory-judgment claim is unripe, barred under the doctrine of redundant remedies, or both.

2. Whether the District failed to establish the redressability component of standing with respect to either its procedural claim or its substantive claim.

3. Whether the District's substantive claim is barred because it falls within the Commission's exclusive (or, alternatively, primary) jurisdiction.

## INTRODUCTION

Although everyone generates waste, no one wants to live beside a landfill. For that reason, the Solid Waste Disposal Act grants landfill-permitting authority to the Commission, an agency with statewide jurisdiction over solid waste disposal, rather than local water districts authorized to regulate the spacing of, and production from, water wells within their boundaries. That does not make local concerns irrelevant; under the Act, the Commission may decide whether to issue a permit for a proposed landfill only after hearing and considering any such concerns.

Like other interested parties, the District has participated in the administrative proceedings through which Post Oak is pursuing a landfill permit, and it will be free to seek judicial review of any final Commission decision with which it disagrees. But the administrative proceedings are still ongoing, so whether the Commission will grant or deny Post Oak's permit application remains to be seen.

The District's premature challenge to Post Oak's landfill proposal is subject to dismissal on several grounds. Because no permit has issued, the District's substantive claim is not ripe, and it is also impermissibly redundant of remedies that the District could seek on judicial review. Because District rules cannot trump a landfill permit issued by the Commission, the relief the District seeks would not redress its alleged injury. And the District's claim falls within the Commission's exclusive (or at least primary) jurisdiction. Accordingly, the Court should reverse the trial court's order denying the Commission's plea to the jurisdiction and render a judgment of dismissal.

## STATEMENT OF FACTS

### I. The Parties

The District "is a groundwater conservation district in Guadalupe County created under and essential to accomplish the purposes of Section 59, Article XVI, Texas Constitution." Tex. Spec. Dist. Code § 8833.002; *see* Act of May 26, 1999, 76th Leg., R.S., ch. 1141, § 1, 1999 Tex. Gen. Laws 4035, 4035–36 (reflecting that the District's boundaries lie entirely within Guadalupe County). Although the District may not impose taxes or certain fees, it generally "has the rights, powers, privileges, functions, and duties provided by the general law of this state, including Chapters 36 and 49[ of the Texas] Water Code." Tex. Spec. Dist. Code §§ 8833.101, 8833.102.

The Commission, which assumed the functions of the Texas Natural Resource Conservation Commission in 2001, is the state agency with "primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment." Tex. Water Code § 5.012; Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01(a)(1), 2001 Tex. Gen. Laws 1933, 1985. One of its many functions is to issue permits for the construction and operation of Type I municipal solid waste landfills. Tex. Health & Safety Code § 361.061; *see* 30 Tex. Admin. Code § 330.3(88)–(90) (defining "[m]unicipal solid waste," "[m]unicipal solid waste facility," and "[m]unicipal solid waste landfill unit"); *id.* § 330.5(a)(1) (explaining that "[a] Type I landfill unit is the standard landfill for the disposal of [municipal solid waste]").

Post Oak is a private entity that has a pending application with the Commission for a permit to construct and operate a Type I municipal solid waste landfill within the District's territory. *See* CR.1193, 1206.

## II. Statutory And Regulatory Background

### A. The Commission's Authority

**1.** The Commission "has the sole and exclusive authority to set water quality standards for all water in the state" and "is the agency with primary responsibility for implementation of water quality management functions." Tex. Water Code §§ 26.0136, 26.023; *see* 30 Tex. Admin. Code § 330.3(175) (confirming that "[w]ater in the state" includes groundwater). As "the principal authority in the state on matters relating to the quality of the water in the state," the Commission is the agency with which "[a]ll other state agencies engaged in water quality or water pollution control activities shall co-ordinate [their] activities." Tex. Water Code § 26.127(a).

The Legislature has authorized the Commission to exercise its authority over water quality in a variety of specific contexts. *See, e.g.*, *id.* §§ 26.403(a)–(c), 26.405(1) (designating the Commission as "the lead agency for the [Texas Groundwater Protection Committee]," which "coordinate[s] groundwater protection activities" of various governmental agencies); *id.* §§ 27.003, 27.011 (generally requiring Commission permits for injection wells in order "to maintain the quality of fresh water in the state"); *id.* § 28.031(a)(3) (authorizing the Commission to issue permits for mine shafts if, "with proper safeguards, both ground and surface water can be adequately protected from pollution").

3

**2. a.** The Solid Waste Disposal Act, Tex. Health & Safety Code ch. 361, is one such context. It requires the Commission to "consider water pollution control and water quality" when addressing "matters relating to municipal solid waste management." *Id.* § 361.011(d). To that end, the Act gives the Commission expansive authority, providing that the agency:

- "is responsible . . . for the management of municipal solid waste . . . and shall coordinate municipal solid waste activities";

- "shall accomplish the purposes of [the Act, *see id.* § 361.002,] by controlling all aspects of the management of municipal solid waste . . . by all practical and economically feasible methods consistent with its powers and duties under [the Act] and other law"; and

- "has the powers and duties specifically prescribed by [the Act] relating to municipal solid waste management . . . and all other powers necessary or convenient to carry out those responsibilities under [the Act]."

*Id.* § 361.011(a)–(c); *see also id.* § 361.026(1) (authorizing the Commission to "provide educational, advisory, and technical services concerning solid waste management to other state agencies"); *id.* § 361.151 (confirming that the Commission's authority over solid-waste management is superior to that of counties).

Other statutes confirm the nature and scope of the Commission's relevant powers. The Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act, for example, describes the primacy and breadth of the Commission's authority over the management of municipal solid waste. *Id.* §§ 363.022–.046, 363.062–.063, 363.092. And a provision of the Water Code confirms that,

4

"[e]xcept as authorized by the commission, no person may . . . discharge . . . municipal waste . . . into or adjacent to any water in the state." Tex. Water Code § 26.121(a)(1).

**b.** The Solid Waste Disposal Act also provides that the Commission may "require and issue permits authorizing and governing the construction, operation, and maintenance of . . . solid waste facilities." Tex. Health & Safety Code § 361.061. The Commission "in its discretion may, in processing a permit application, make a separate determination on the question of land use compatibility." *Id.* § 361.069.

When a permit is sought, the Commission must notify "the state senator and representative who represent the area in which the facility is or will be located." *Id.* § 361.0641. And when a permit application is "administratively complete," *id.* § 361.068, the Commission "shall mail a copy of the application or a summary of its contents" to specified officials and health authorities, allowing them to "present comments and recommendations on the permit application before the commission acts on the application." *Id.* § 361.067; *see also id.* § 361.081(a) (mandating that the Commission require permit applicants to provide notice to nearby landowners and businesses); 30 Tex. Admin. Code §§ 39.401–.425 (Commission rules governing notice). The Act does not require notice of permit applications to be mailed to groundwater conservation districts (except where a district qualifies as a nearby landowner or has some other attribute that brings it within the statute's scope). The Commission may not "hear testimony in a contested case" absent evidence that "proper notice of the hearing was given to affected persons." Tex. Health & Safety Code § 361.083(a).

Under the Act, the Commission's role does not end when it issues a permit. The agency "may, for good cause, deny or amend a permit it issues or has authority to issue" for several reasons, including "water pollution." *Id.* § 361.089(a); *see also* Tex. Water Code § 7.302(b) (providing the grounds on which "the commission may revoke, suspend, or revoke and reissue a permit").

**3.** The body of Commission rules governing municipal solid waste is voluminous. 30 Tex. Admin. Code ch. 330; *see* Tex. Health & Safety Code § 361.024(a) (granting the Commission rulemaking power). Under those rules, any application for a municipal solid waste landfill permit must satisfy a long list of requirements, *see* 30 Tex. Admin. Code §§ 330.57–.65, many of which relate to groundwater protection. *See, e.g.*, *id.* § 330.61(c)(2), (d)(3) (requiring maps identifying "all known water wells within 500 feet of the proposed permit boundary" and the "locations of monitor wells"), 330.61(j)(1)–(4) (requiring reports on "the geology and soils of the proposed site," "fault areas located within the proposed site," "seismic impact zones," and "unstable areas"), 330.61(k)(1), (3) (requiring "data about the site-specific groundwater conditions at and near the site" and a demonstration of how the proposed facility will comply with storm-water permitting requirements and the Clean Water Act).

The permit application must also contain a "site development plan"—that is, "[a] document, prepared by [a] design engineer, that provides a detailed design with supporting calculations and data for the development and operation of a solid waste site." *Id.* § 330.3(140). Any such plan must provide for a variety of safeguards, *id.* § 330.63(a), many of which likewise relate to the protection of groundwater. *See, e.g.*,

6

*id.* § 330.63(b)(4) (requiring a description of "how all liquids resulting from the operation of solid waste processing facilities will be disposed of in a manner that will not cause surface water or groundwater pollution"), 330.63(c)(1), (2) (specifying the requirements for analyses of drainage and flood control), 330.63(d)(1)(B) (requiring that units be designed to "control and contain spills and contaminated water from leaving the facility" in a worst-case scenario), 330.63(e) (requiring a geology report "prepared and signed by a qualified groundwater scientist" that addresses all regional aquifers), 330.63(f)(3) (requiring a "[g]roundwater sampling and analysis plan" that includes "an analysis of the most likely pathway(s) for pollutant migration in the event that the primary barrier liner system is penetrated").

The Commission's rules further provide for groundwater monitoring of municipal solid waste landfills both while they are active and after they have closed. *Id.* §§ 330.63(f), 330.401(a), (b), (e), (f); *see id.* §§ 330.403 (requiring installation of groundwater monitoring systems), 330.405(a) (requiring "consistent sampling and analysis procedures"), 330.407, 330.407(c)(3) (describing the detection monitoring program for Type I landfills, which requires the submission of various categories of information, including "the groundwater flow rate and direction in the uppermost aquifer"), 330.421 (providing construction specifications for monitor wells); *see also id.* § 330.463(a)(2) (authorizing the Commission's executive director to increase or decrease the length of the post-closure care period).

## B. The District's Authority

**1.** Chapter 49 of the Texas Water Code contains "[p]rovisions [a]pplicable to [a]ll [groundwater conservation d]istricts." Tex. Water Code ch. 49 (title),

7

§ 49.001(a)(1); *see id.* § 49.002; Tex. Const. art. XVI, § 59; Tex. Spec. Dist. Code § 8833.002. Among other things, it authorizes districts to sue, Tex. Water Code § 49.066(a), and reflects the oversight role that the Commission plays with respect to district functions. *See, e.g.*, *id.* §§ 49.181(a) (providing that districts may not issue bonds without authorization from the Commission), 49.182(a) (preventing districts from altering construction plans for certain projects without Commission approval), 49.231(c) (requiring districts to apply to the Commission for permission to adopt certain fees), 49.456(a) (preventing districts from filing for bankruptcy without Commission authorization).

**2. a.** Chapter 36 of the Water Code (the other chapter setting forth the District's authority, *see* Tex. Spec. Dist. Code § 8833.101) confirms that the Commission "has exclusive jurisdiction over the creation of [groundwater conservation] districts," reviews their performance, and has the power to dissolve them. Tex. Water Code §§ 36.001(2), 36.011(b), 36.301–.303, 36.304; *see id.* §§ 36.1071(d) (requiring "[t]he commission [to] provide technical assistance to a district during its initial operational phase"), 36.120 (requiring districts to make certain information available to the Commission's executive director upon request); 30 Tex. Admin. Code §§ 293.3(a) (providing that "[t]he powers and duties of all districts . . . created under the Texas Constitution, . . . Article XVI, §59, are subject to the continuing right of supervision of the State of Texas, by and through the commission"), 293.22(a) (setting out "procedures for commission review of groundwater conservation district . . . noncompliance with requirements of Texas Water Code . . . Chapter 36"); *see also* Tex. Water

8

Code § 36.001(8)(E) (providing a definition of "[w]aste" of groundwater that applies "unless such discharge is authorized by permit, rule, or order issued by the commission under Chapter 26"); District R. 1.1(ii)(5), *available at* http://gcgcd.org/ (click on "GCGCD Rules") (last visited Sept. 17, 2015) (same).

In governing only those districts that have "the authority to regulate the spacing of water wells, the production from water wells, or both," Tex. Water Code § 36.001(1), Chapter 36 also confirms the nature and function of groundwater conservation districts. It authorizes such districts to

> make and enforce rules, including rules limiting groundwater production based on tract size or the spacing of wells, to provide for conserving, preserving, protecting, and recharging of the groundwater or of a groundwater reservoir or its subdivisions in order to control subsidence, prevent degradation of water quality, or prevent waste of groundwater and to carry out the powers and duties provided by this chapter.

*Id.* § 36.101(a); *see id.* §§ 36.0015 (using similar language to describe the purpose of Chapter 36), 36.101–.102 (granting districts rulemaking authority and enforcement power), 36.1071(a) (specifying the goals that districts must address in their groundwater management plans); *see also Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 833–36 (Tex. 2012) (discussing the history and purpose of groundwater conservation districts); *Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conserv'n Dist. No. 1*, 263 S.W.3d 910, 912–13 (Tex. 2008) (same); *Sipriano v. Great Spring Waters of Am., Inc.*, 1 S.W.3d 75, 79–80 (Tex. 1999) (same); Texas Commission on Environmental Quality, *Priority Groundwater Management Areas and Groundwater Conservation Districts: Report to the 84th Texas Legislature*, SFR-053/09, at 15 (Jan.

9

2015) (map reflecting 100 groundwater conservation districts spread throughout the State).

The phrase "prevent degradation of water quality" was added to sections 36.101(a) and 36.116(a) in 2001 along with language confirming districts' ability to make and enforce "rules limiting groundwater production based on tract size or the spacing of wells." Act of May 28, 2001, 77th Leg., R.S., ch. 1164, § 1, 2001 Tex. Gen. Laws 2627, 2627; Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.44, 2.50, 2001 Tex. Gen. Laws 1991, 2012, 2015. The text of section 36.116(a) reflects that preventing degradation of water quality is something a district may accomplish by regulating "the spacing of water wells" or "the production of groundwater," Tex. Water Code § 36.116(a)(1), (2), as by ensuring, for instance, that overproduction does not cause groundwater with a naturally higher saline content to be pulled into another well's production zone of fresher water. *See also* House Comm. on Natural Resources, Bill Analysis, Tex. H.B. 3037, 77th Leg., R.S. (2001) (stating that the bill amending section 36.116 in 2001 "d[id] not expressly delegate any additional rulemaking authority"); Enrolled Bill Summary, Tex. H.B. 3037, 77th Leg., R.S. (2001), *available at* http://www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=77R&Bill=HB3037 (under "Additional Documents" at bottom of page) (last visited Sept. 17, 2015) (adding that the bill merely "clarif[ied] a groundwater conservation district's rule-making authority to regulate water well spacing and production, expanding the purpose of such regulation to include the prevention of interference between wells and the prevention of water quality degradation and establishing guidelines for such regulation").

10

**b.** Consistent with the scope of their authority, groundwater conservation districts are authorized to require permits "for the drilling, equipping, operating, or completing of wells or for substantially altering the size of wells or well pumps." Tex. Water Code § 36.113(a) (further reflecting that districts' permitting authority encompasses proposed "change[s] in the withdrawal or use of groundwater during the term of a permit"); *see* District R. 5.1–5.10 (governing District permits). The categories of information that districts may require applicants for such permits to provide further illuminates the scope of Chapter 36. *See, e.g.*, Tex. Water Code § 36.113(c)(3), (4), (7) (requiring "a statement of the nature and purpose of the proposed use and the amount of water to be used for each purpose," "a water conservation plan or a declaration that the applicant will comply with the district's management plan," and "a drought contingency plan"); *see also id.* § 36.1132 (reflecting that districts' issuance of permits should be based on modeled available groundwater).

**c.** Chapter 36 gives the District no authority over municipal solid waste. In this respect, the District's authority contrasts with that of municipalities and counties, which are authorized to designate areas within their boundaries "in which the disposal of municipal or industrial solid waste will not be prohibited." Tex. Health & Safety Code § 363.112(a); *see id.* § 363.112(d) (providing that the Commission "may not grant an application for a permit to process or dispose of municipal or industrial solid waste in an area in which the processing or disposal of municipal or industrial solid waste [was timely] prohibited by an ordinance or order authorized by Subsec-

tion (a)"); *see also id.* §§ 364.012(a), (b) (provisions of the County Solid Waste Control Act authorizing a county to "prohibit the disposal of municipal or industrial solid waste in the county if the disposal of the municipal or industrial solid waste is a threat to the public health, safety, and welfare," so long as it timely designates "the area of the county in which municipal or industrial solid waste disposal is not prohibited"), 364.012(f) (limiting the Commission's authority in the same manner as section 363.112(d)); 30 Tex. Admin. Code § 330.23 (governing relationships with other governmental entities, including municipal and county governments but excluding the District, *compare* 30 Tex. Admin. Code § 330.23(d), *with* Act of May 29, 1997, 75th Leg., R.S., ch. 1066, §§ 3, 5, 1997 Tex. Gen. Laws 4059, 4059).

Defined by Chapters 36 and 49 of the Water Code, Tex. Spec. Dist. Code § 8833.101, the District's authority also contrasts with that of other districts created under article 16, section 59 of the Texas Constitution. Some such districts' powers include, for instance, those granted by Chapter 51 of the Water Code. *E.g.*, *id.* § 9009.101 (Cade Ranch Water Control and Improvement District No. 1 of Galveston County); Act of May 30, 1993, 73d Leg., R.S., ch. 626, §§ 1.02, 1.08, 1993 Tex. Gen. Laws 2350, 2351, 2356 (Edwards Aquifer Authority); *see* Tex. Water Code § 51.121(b)(6), (c) (authorizing water control and improvement districts to "accomplish[] by any practical means" a range of objectives, including "the protection, preservation, and restoration of the purity and sanitary condition of water within the state"); *see also* 30 Tex. Admin. Code § 330.549(a) (prohibiting Type I landfills "on the recharge zone of the Edwards Aquifer").

**3.** The District's rules total less than 50 pages. *See* District R. 1.1–10.6. The applicable version of District Rule 8.1 (the rule at the center of this dispute, *see* CR.1193) contains three sentences:

> [1] All persons generating, transporting, disposing, applying, or otherwise managing substances defined under state or federal law as solid, hazardous, or radioactive waste, or as sludge, must follow any and all applicable federal, state, and local environmental statu[t]es, requirements, and regulations, including, but not limited to those imposed under the Solid Waste Disposal Act (RCRA), the Public Health Service Act (the Safe Drinking Water Act), the Federal Water Pollution Control Act (the Clean Water Act), the National Environmental Policy Act, the Atomic Energy Act and the Low-Level Radioactive Waste Policy Act, as those statu[t]es, requirements or regulations are administered by the appropriate agency, including but not limited to the Texas Railroad Commission, the Texas Commission on Environmental Quality , the Texas Department of Health, or their successors, and the Environmental Protection Agency.
>
> [2] In the event that applicable statutes, requirements, or regulations require that the person generating, transporting, applying, disposing or otherwise managing a waste or a sludge obtain a permit from an agency, and where those activities occur within the boundaries of the District, notice of the application must be provided to the District by the applicant within ten days of the date of application.
>
> [3] In no event may waste or sludge be permitted to be applied in any manner in any outcrop area of any aquifer within the [District].

CR.577–78 (line breaks added).

## III. Post Oak's Application For A Landfill Permit

Post Oak applied to the Commission for a Type I municipal solid waste landfill permit and an accompanying land-use compatibility determination for a location within the District's territory. CR.605–765. The application indicates that the proposed landfill would accept "certain special waste," CR.77; *see* CR.647–51, and the definition of "[s]pecial waste" includes certain exempt hazardous waste. 30 Tex. Admin. Code § 330.3(148)(A). That observation does not, however, change the character of the Type I municipal solid waste landfill permit Post Oak requested. *See id.* §§ 330.5(a), 330.171(c)(6) (reflecting that Type I municipal solid waste facilities may receive special waste). Although it allegedly never received formal notice of Post Oak's applications, CR.1197, 1200, the District became aware of each in time to lodge objections with the Commission. CR.29, 38, 54, 61–74, 1106–29, 1198–1200; 1.RR.8.

A permit from the Commission is not the only type of permit needed for a Type I municipal solid waste landfill. Post Oak indicated that it would seek permits from several other entities, including the District. CR.109–11. But consistent with the District's regulatory purview, the permits from the District would be for nothing more than "[t]he drilling of a water well on the site . . . and the drilling of monitoring wells." CR.109; *see* District R. 5.1–5.10 (addressing the types of permits the District issues).

14

## IV. Trial Court Proceedings

**A.** After submitting its comments to the Commission, the District filed suit under the Uniform Declaratory Judgments Act against Post Oak even though the Commission has not issued, and may never issue, a permit for the proposed landfill. CR.4–14 (original petition); CR.1193–1204 (live petition); *see* CR.1206, 1.RR.5. At a hearing, the District's attorney confirmed that Post Oak's permit application was the impetus for the suit and argued that a Commission permit authorizing the landfill "is precisely the type of situation that the Groundwater District rules were intended to prohibit." 1.RR.5.

The District's original petition alleged "two simple claims," CR.463, one procedural and one substantive. *See* CR.4–14. Assuming the live petition retained it, the District's procedural claim is that Post Oak failed to provide the District notice of its permit application, in alleged violation of the second sentence of Rule 8.1. CR.1197, 1200. The District's substantive claim is that the final sentence of Rule 8.1 prohibits operation of a landfill at the proposed site. CR.1201; *see* CR.469 (the District's assertion that "Post Oak's proposal to dispose of solid waste 'within the outcrop area of the Carrizo-Wilcox recharge zone' contravenes the District's Rule 8.1" (quoting Post Oak's permit application, CR.680)).

Post Oak filed a plea to the jurisdiction arguing that, because the Commission had not yet issued the requested permit, the District's claim was not ripe and the District had neither been injured nor exhausted its administrative remedies. CR.15–23. Post Oak later filed an answer that reiterated those jurisdictional objections. CR.157–58 (asserting, as defenses, that Rule 8.1 sought to exercise powers beyond

those granted to the District by the Texas Constitution and Water Code, that the Solid Waste Disposal Act preempted Rule 8.1, and that the District had not exhausted its administrative remedies); *see also* CR.766–69 (Post Oak's amended answer adding constitutional defenses); CR.1030–44 (Post Oak's original counterclaim (which was later non-suited, CR.1221–22) based on alleged constitutional violations).

Before responding to Post Oak's plea, the District moved for partial summary judgment, asking the trial court to declare that Post Oak had violated Rule 8.1's procedural and substantive requirements. CR.25–156 (original motion); CR.552–765 (amended motion reserving the issues of "civil penalties, costs, attorney's fees, interest on fees, injunctive relief," and other unspecified relief for later resolution, CR.553 n.1); *but see* CR.1200–03 (amended petition dropping the District's request for civil penalties). Post Oak responded, again asserting that the trial court lacked jurisdiction and alternatively contending that the District's motion for partial summary judgment should be denied. CR.278–320, 771–971 (original and amended responses); *see also* CR.502–16, 985–1006 (the District's replies to Post Oak's original and amended responses). In support of the latter contention, Post Oak submitted evidence that it argues defeats the District's substantive claim on the merits. CR.1017 (engineer's affidavit stating that "the operation of [Post Oak's] proposed landfill will not permit waste or sludge to be applied in any manner in any outcrop area of an aquifer within the . . . District").

The District also responded to Post Oak's plea. CR.490–501. In that filing, the District acknowledged that if the Commission "convene[d] a contested-case hearing

regarding Post Oak's [permit] application, the District may exercise its right to participate in that hearing as an affected person. If [the Commission] grants Post Oak a permit, then, the District may exhaust its administrative remedies and seek judicial review of that agency decision." CR.496; *see* Tex. Gov't Code §§ 2001.003 (4), (5), 2001.051, 2001.145; Tex. Health & Safety Code § 361.321; Tex. Water Code § 5.351; 30 Tex. Admin. Code § 80.109(a), (b)(5). But after a hearing, *see* CR.522, the trial court denied Post Oak's plea, reasoning that a declaratory-judgment suit was a proper means for the District to enforce Rule 8.1 and rejecting Post Oak's preemption argument. CR.548–51.

**B.** Citing its "duty and responsibility to administer the Texas Solid Waste Disposal Act," the Commission intervened, asserting that "it is the responsibility of [the Commission], . . . not the District, to determine whether or not the proposed location of the landfill is proper" and confirming that "[the Commission's] decision is subject to judicial review." CR.1046; *see* CR.1133–36 (amended intervention petition); CR.1064–70 (the District's unsuccessful motion to strike the Commission's intervention).

The Commission then filed a plea to the jurisdiction that also addressed the District's and Post Oak's summary-judgment contentions. CR.1081–1129; CR.1130–32 (supplement). In this filing, the Commission asserted that the District lacked statutory authority to control whether Post Oak could operate a landfill at the proposed location, asserting exclusive (or at least primary) jurisdiction over the landfill-permitting process. CR.1082–97. The Commission also asserted that the District's suit

was not ripe because Post Oak's permit application might be denied by the Commission, in which case the proposed landfill would never be constructed. CR.1097–99; *see* CR.1146–65 (the District's response).

**C.** In a twelve-page order, the trial court granted the District's motion for partial summary judgment and rejected the arguments presented in the Commission's plea. CR.1179–88; *see also* CR.1188–90 (rejecting Post Oak's constitutional assertions). Although the order stated that the Commission had granted Post Oak's permit application, CR.1180, that statement was—and remains—inaccurate. In a letter to the trial court requesting a ruling on its plea, the Commission noted that its Executive Director had merely "recommended that Post Oak be issued a permit." CR.1206. The letter went on to explain the additional hurdles that Post Oak would need to clear before obtaining a permit, adding that "[i]t is entirely possible that the Commissioners ultimately will decline to issue Post Oak a permit. Alternatively, it is possible that the permit will be issued, but under terms that are satisfactory to the [District]." CR.1206.

Several months later, the trial court held a hearing on the Commission's plea and the District's motion to strike, 2.RR.4–16, and denied them both. CR.1218, 1220. Post Oak non-suited its constitutional counterclaims, CR.1221–22, and both it and the Commission timely appealed the trial court's order denying the Commission's plea. CR.1223–25, 1228–31; *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## SUMMARY OF THE ARGUMENT

An appellate court may "choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). Several such grounds exist here.

**1.** The District's substantive claim is not ripe. That claim requests a declaration that operation of Post Oak's proposed landfill would violate District Rule 8.1, and it is expressly linked to Post Oak's pursuit of a landfill permit from the Commission. The District admits that, if the Commission were to issue such a permit, it would be able to challenge that final decision on judicial review, and it is undisputed that the landfill project could not move forward without a Commission permit. The District would have a ripe claim only if the underlying administrative proceedings result in a final Commission order granting Post Oak's requested permit, and the District would be free to pursue that claim, after exhausting its administrative remedies, on judicial review.

No such claim could be a proper part of this declaratory-judgment suit. It could be litigated only in a separate suit authorized by section 361.321 of the Solid Waste Disposal Act and governed by the Administrative Procedure Act. And because such a suit would allow the District to seek full relief on the substantive claim it attempted to raise here, this declaratory-judgment suit is jurisdictionally barred under the doctrine of redundant remedies.

**2.** Because the District failed to allege a redressable injury with respect to either its procedural claim or its substantive claim, its entire declaratory-judgment suit should be dismissed for lack of standing.

Assuming it is even still part of the case, the District's procedural claim challenges Post Oak's alleged failure to notify the District of its permit application. But it is undisputed that the District received actual notice of that application in time to file comments with the Commission, and its live petition requests no relief with regard to that claim. For each of these reasons, a judgment in the District's favor on its putative procedural claim would not give the District any relief beyond what it has already obtained outside of court.

Albeit for different reasons, the District's substantive claim is likewise not redressable. To the extent Post Oak argues it is ripe, that claim depends on the notion that application of District Rule 8.1 would prevent Post Oak's landfill project from moving forward even if Post Oak obtained a permit from the Commission. But under the relevant statutes, the District has no authority over solid-waste disposal or to prevent degradation of groundwater by any means other than regulating the spacing of or production from water wells. Because a District rule could therefore not prevent action authorized by a landfill permit from the Commission, granting the District full relief on its substantive claim regarding the import of District Rule 8.1 would not redress its alleged injury flowing from the anticipated operation of Post Oak's proposed landfill.

**3.** The District's substantive claim also falls within the Commission's exclusive jurisdiction. The Solid Waste Disposal Act creates a detailed regulatory scheme under which the Commission is authorized to grant or deny landfill permits such as the one sought by Post Oak, and any Commission action under that scheme may be made

only after detailed consideration of the very groundwater issues that animate the District's concerns. When considering whether a claim falls within an agency's exclusive jurisdiction, courts look to the substance of a plaintiff's claim, not the plaintiff's characterization of its claim. Here, the District's substantive claim is expressly tied to Post Oak's request for a permit from the Commission, and as already noted, that claim could prevent operation of the proposed landfill only by preventing Post Oak from obtaining a Commission permit.

Alternatively, the District's substantive claim falls within the Commission's primary jurisdiction. The Commission is staffed with experts trained to apply the detailed requirements of the Solid Waste Disposal Act and related administrative rules when deciding whether to grant permits for municipal solid waste landfills, and allowing the Commission to fulfill that statutory function furthers the legislative objective of decisional uniformity in an area prone to local bias. For each of these reasons, the Court should reverse the trial court's order denying the Commission's plea to the jurisdiction and render a judgment of dismissal.

## STANDARD AND SCOPE OF REVIEW

Whether a trial court has subject-matter jurisdiction is a question of law that the Court reviews *de novo. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see Patel v. Tex. Dep't of Licensing & Regulation*, No. 12–0657, 2015 WL 3982687, at *5 (Tex. June 26, 2015) (reflecting the jurisdictional nature of standing, ripeness, and the redundant-remedies doctrine); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (same, for exclusive jurisdiction).

Although the doctrine of primary jurisdiction is prudential, rather than jurisdictional, it is properly raised in an interlocutory appeal following the denial of a plea to the jurisdiction and is likewise subject to *de novo* review. *Subaru*, 84 S.W.3d at 220, 222; *City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747, 757 n.3 (Tex. App.—San Antonio 2005, no pet.); *see* CR.1096–97 (the Commission's plea raising this issue).

Because defects in subject-matter jurisdiction cannot be waived, appellants are not limited to the arguments raised in their pleas. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–95 & n.3 (Tex. 2012) (disapproving of *Kinney Cnty. Groundwater Conserv'n Dist. v. Boulware*, 238 S.W.3d 452, 461 (Tex. App.—San Antonio 2007, no pet.), and other like decisions); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). They may raise additional jurisdictional arguments for resolution on appeal. *Id.*

## ARGUMENT

### I. The District's Substantive Claim Is Not Ripe, And It Is Impermissibly Redundant Of A Suit For Judicial Review.

**A. 1.** Ripeness "is a threshold issue that implicates subject matter jurisdiction" and "emphasizes the need for a concrete injury." *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998); *accord DPS v. Deputy Sheriff's Ass'n of Bexar Cnty.*, No. 04-07-00233-CV, 2007 WL 3355626, at *2 (Tex. App.—San Antonio Nov. 14, 2007, pet. denied) (mem. op.). A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet, and may never, come to pass. *Waco ISD v. Gibson*, 22 S.W.3d 849, 852 (Tex.

2000); *Patterson*, 971 S.W.2d at 442–43 (citing, *e.g.*, 13A Wright et al., Federal Practice and Procedure, § 3532.1, at 130 (2d ed. 1984)); *Hardee v. City of San Antonio*, No. 04-07-00740-CV, 2008 WL 2116251, at *1 (Tex. App.—San Antonio May 21, 2008, no pet.) (mem. op.); *f*; *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) (observing that "the ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes").

The ripeness doctrine applies in any suit, including one seeking a declaratory judgment. As the Court confirmed in *Hardee*, "[a] declaratory judgment is appropriate only if there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy." 2008 WL 2116251, at *1. "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (quoted in *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)).

Ripeness is especially important in the administrative context. The doctrine "prevents courts from entangling themselves in abstract disagreements over administrative policies while at the same time serving to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Patterson*, 971 S.W.2d at 443 (internal quotation marks omitted); *see also id.* (quoting the statement in Nichol, *Ripeness and the Constitution*, 54 U. Chi. L. Rev. 153, 178 (1987), that the ripeness doctrine "allows

the courts to postpone interfering when necessary so that other branches of government . . . may perform their functions unimpeded"). In "generally preclud[ing] judicial review of an administrative action that is not final," the ripeness doctrine thus avoids prematurely interrupting agency proceedings, promotes judicial economy, sustains respect for the agency's administrative process, and protects the agency's autonomy. *Edwards Aquifer Auth. v. Bragg*, 21 S.W.3d 375, 380 (Tex. App.—San Antonio 2000), *aff'd*, 71 S.W.3d 729 (Tex. 2002).

Several cases illustrate proper application of these principles. In *Deputy Sheriff's Association*, for instance, this Court considered a claim that certain peace officers fell within a statutory exception to investigation by the Texas Department of Public Safety. 2007 WL 3355626, at *1–2. After a sheriff issued a letter stating that one of the conditions necessary to invoke the exception had not been satisfied, an association acting on the officers' behalf sought a declaration that the condition had in fact been satisfied. *Id.* at *2.

In its ripeness analysis, the Court began by noting that, although "the Department has the authority to conduct investigations of alleged violations of [the statute]," it had "not concluded its investigation. Whether the Department will reach an adverse decision against the officers in question, impose civil penalties, or refer the matter for criminal prosecution is unknown at this time." *Id.* The Court further explained that the association's claim "presuppose[d] that (1) the Department will conclude the officers in question do not qualify for the [statutory] exception and (2) the Department will take actions to preclude the off-duty employment of the officers." *Id.* at *3.

24

Rejecting the association's reliance on the sheriff's letter, the Court concluded that "the Department is not necessarily bound by the Sheriff's determination of the facts" and that "there [wa]s no way to predict what determination, if any, the Department w[ould] reach. Consequently, the relief that the Association seeks, at this point, would be based on hypothetical or contingent events that may not occur." *Id.* Accordingly, the association's claim was not ripe. *Id.*; *see also Hardee*, 2008 WL 2116251, at *3 (finding a lack of ripeness where a defendant city had neither been given the opportunity to make a final determination regarding the applicability of land-use regulations nor issued or denied any land-use permits).

A decision from the Third Court of Appeals is also instructive. In *Save Our Springs Alliance v. City of Austin*, the plaintiffs claimed that a city was approving development projects in violation of an ordinance and sought to bar the city from granting permits for those projects. 149 S.W.3d 674, 679 (Tex. App.—Austin 2004, no pet.). The city argued that the claims were not ripe "because they were not based on the application of the [o]rdinance to any property or development permit." *Id.* at 679–80. Although developers had submitted permit applications, and a committee consisting of city staff members had approved the applications, only the City zoning committee had final authority to issue permits, and it had not yet done so. *Id.* at 684–85.

The court found that, absent issuance of permits, the plaintiffs' claims were not ripe. *Id.* at 685. It explained that

> [t]he individual and particular nature of th[e applicable] statutory scheme [governing which ordinances applied to pending devel-

opment applications, *see id.* at 678,] requires that individual permits be issued or denied for a controversy to be ripe for adjudication. Otherwise, a court would be ruling on a hypothetical application of land-use regulations to plats and interfering with the functions of land-use regulatory agencies before they would have the opportunity to perform those functions themselves.

*Id.* at 684. The Court further noted that "because a grant of a permit by the [c]ity does not automatically result in immediate development and [the plaintiffs] would have ample opportunity in such case to challenge the granted permit, they will not suffer any additional hardship by waiting until a permit is granted." *Id.* at 685; *cf. BSR Water Co.*, 190 S.W.3d at 755 (finding ripeness where the alleged breach of an agreement gave rise to an injury independent of the Commission's future decision about whether to grant a certificate of convenience and necessity).

**2.** Under the redundant-remedies doctrine, "the power of courts to issue declaratory judgments . . . in the face of administrative proceedings is limited." *Kuntz v. Khan*, No. 03-10-00160-CV, 2011 WL 182882, at *4 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.). A court "will not entertain an action brought under the [Uniform Declaratory Judgments Act] when the same claim could be pursued through different channels." *Patel*, 2015 WL 3982687, at *6 (addressing a situation in which judicial review had not yet been sought, *see id.* at *2). Accordingly, "'[w]hen a statute provides a method for attacking an agency order, a declaratory judgment action directed at that order will not lie.'" *Cervantes v. N.H. Ins. Co.*, No. 04-12-00722-CV, 2013 WL 3486824, at *2 (Tex. App.—San Antonio July 10, 2013, pet. denied) (mem. op.) (quoting *Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied)).

**B. 1.** The District's substantive claim—that it would be injured by Post Oak's construction and operation of the proposed landfill—is not ripe. That claim is the focus of the live petition, which complains at the outset "of [Post Oak's] pursuit of a landfill permit, proposing construction and operation of a landfill in Guadalupe County in violation of [the third sentence of] the District's Rule 8.1," CR.1193, and later confirms that the District is "seeking a declaration that the District's Rule 8.1 prohibits Post Oak from operating a waste disposal facility at the proposed site." CR.1195; *see* CR.1201 (request for declaratory relief); CR.1202 (prayer).

The District's claim depends on the Commission's hypothetical issuance of a landfill permit—an event that has not yet occurred and may never occur. As the District's attorney explained in the trial court, the proposed landfill

> has not been permitted. It's still being reviewed by [the Commission]; but were it to be permitted, it would allow for construction of a landfill, and for this landfill to accept . . . a variety of different types of waste [including sludge]. And the facility is proposed to be located on the outcrop of [the] Carrizo-Wilcox Aquifer. So this is precisely the type of situation that the Groundwater District rules were intended to prohibit.

1.RR.5. Of course, if the Commission does not issue the requested permit, Post Oak will be unable to build or operate the proposed landfill, so there will be no occasion for a court to decide whether such a hypothetical landfill would run afoul of District Rule 8.1. This state of affairs describes an unripe claim.

**2.** The District's substantive claim is also barred under the doctrine of redundant remedies. Because a successful suit for judicial review of a final Commission order granting a permit would give the District full relief on its substantive declaratory-

27

judgment claim, *see* CR.1193, 1202, that claim is impermissibly redundant. *See Patel*, 2015 WL 3982687, at \*6; *Cervantes*, 2013 WL 3486824, at \*2. Dismissal of the District's substantive claim would be appropriate on this basis as well.

**C.** Neither the trial court's reasoning nor the arguments that the District presented below can save its substantive claim from dismissal.

**1.** The trial court appears to have misunderstood the status of Post Oak's request for a landfill permit. In its order on the District's motion for partial summary judgment, the court purported to "take[] judicial knowledge that [the Commission] granted Post Oak a permit to construct and operate [Post Oak's] Proposed Landfill." CR.1180. That statement was inaccurate when made, and it remains inaccurate today. *See* 1.RR.5 (the District's confirmation that the proposed landfill "has not been permitted"). As the Commission explained in a letter to the trial court, the Commission's executive director has merely recommended that the permit be issued, and that recommendation does not mean that a permit will issue. The next step

> is for a contested case hearing to be held at the State Office of Administrative Hearings[, after which] . . . the administrative law judges . . . will issue a proposal for decision . . ., which the TCEQ Commissioners will then consider. . . . "[O]nly the TCEQ Commissioners—not the [Commission's executive director] and not the [administrative law judges]—can order the issuance of the permit Post Oak has requested, and the Commissioners are not bound by the recommendations of either the [executive director] or the [administrative law judges].

CR.1206; *see* CR.1208 (Post Oak's letter asking the Commission to refer the matter to the State Office of Administrative Hearings).

The recommendation of the Commission's executive director is thus analogous to the sheriff's letter in *Deputy Sheriff's Association*, 2007 WL 3355626, at *2–3, and the staff-level approvals in *Save Our Springs*, 149 S.W.3d at 684–85, neither of which established a ripe claim. By its own admission, the District will have an opportunity not only to participate in the upcoming contested-case hearing and exhaust its administrative remedies, but also to challenge, on judicial review, any final Commission order granting Post Oak a permit. CR.496. If such an order is made, then—and only then—would the District have a ripe claim that could be resolved on judicial review. *See Save Our Springs*, 149 S.W.3d at 685. Because that claim would be pursued in a new and separate action, the Court should dismiss the District's substantive claim in this declaratory-judgment suit.

**2.** In the trial court, the District argued that the Commission had "mischaracterized the District's claims," asserting that "the District is seeking a declaration of the rights of the parties under its Rule 8.1," rather than asserting "a challenge to an as-yet-unissued solid waste disposal permit." CR.1148. The trial court accepted this argument. In its order denying Post Oak's plea, it stated that the District "is not seeking to challenge any [Commission] decision or order" but is rather complaining of "Post Oak's failure to comply with the District's own Rule 8.1" and found the suit "undoubtedly ripe" because "Post Oak has clearly indicated [its] intention to build a waste disposal site and has not attempted any compliance with the District's rules." CR.548, 550–51; *see also* CR.1162–64 (the District's argument on ripeness).

But as already noted, the live petition specifically references Post Oak's permit application, CR.1193, and a statement of the District's trial counsel confirms that the

application is what led the District to sue. 1.RR.5. Neither of those observations should be surprising; if the District could prevent the Commission from issuing a permit before the administrative process has run its course, it would achieve its objective of ensuring that the landfill project does not move forward.

The District's and trial court's view that the District could enforce Rule 8.1 to achieve that result regardless of whether the Commission issues a permit rests on a misunderstanding of the law. *Compare* CR.1153 (stating that the Solid Waste Disposal Act and Chapter 36 of the Water Code "grant [the Commission] and the District overlapping authority with regard to protection of water quality from solid waste disposal activities") *and* CR.1156–57 (citing Texas Attorney General Opinion GA-1011 (2013), which concerned a water control and improvement district that was granted powers under Water Code Chapters 49 and 51 (rather than Chapters 49 and 36)), *with supra* pp. 3–12 (citing the statutory provisions that define the Commission's and the District's distinct spheres of authority and reflect the District's complete lack of authority over municipal solid waste disposal).

In any event, even assuming Rule 8.1 would apply to Post Oak's proposed landfill, it could not trump a Commission permit, so "advising [the parties] of their rights under Rule 8.1" would not "conserve time and resources." CR.1163; *see infra* Part II.B.2. Moreover, the District's argument that the Solid Waste Disposal Act does not limit the District's powers, *e.g.*, CR.1115, is unavailing because the District's powers do not include the ability to say where or how a landfill permitted by the Commission may or may not be located or operate. Accordingly, to avoid requesting

30

an impermissible advisory opinion, the District would have to challenge the propriety of a permit, and it may do so (assuming the Commission issues a permit) only after exhausting its administrative remedies and suing for judicial review.

## II. Because It Did Not Allege A Redressable Injury, The District Lacks Standing To Sue.

**A.** The doctrine of standing "serves to safeguard the separation of powers by ensuring that the judiciary does not encroach upon the executive branch by rendering advisory opinions, decisions on abstract questions of law that do not bind the parties." *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 174 (Tex. App.—Austin 2013, no pet.). To establish standing under the Texas Constitution, a plaintiff must allege "a concrete injury to [itself] and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012); *accord City of Shavano Park v. Ard Mor, Inc.*, No. 04-14-00781-CV, 2015 WL 4554524, at *4 (Tex. App.—San Antonio July 29, 2015, no pet. h.) (mem. op.). When addressing this question, Texas courts often "look to the similar federal standing requirements for guidance." *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001); *see Heckman*, 369 S.W.3d at 154 (noting that Texas standing doctrine "parallels the federal test for Article III standing" articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

One essential element of standing requires a plaintiff to "allege facts from which it reasonably could be inferred," *Warth v. Seldin*, 422 U.S. 490, 504 (1975), that it is "likely, as opposed to merely speculative, that the [plaintiff's alleged] injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561 (internal

31

quotation marks omitted); *see Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 836 (Tex. App.—Austin 2010, no pet.). To satisfy this requirement, the plaintiff's allegations must reflect a "substantial probability" that the relief requested will redress the alleged injury, *Warth*, 422 U.S. at 504, and the inquiry proceeds on a claim-by-claim basis. *See Heckman*, 369 S.W.3d at 155 (explaining that "[i]f, for example, a plaintiff suing in a Texas court requests injunctive relief as well as damages, but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim"). A plaintiff's failure to show redressability requires dismissal for lack of subject-matter jurisdiction. *See, e.g.*, *Kelly v. Harris*, 331 F.3d 817, 820–21 (11th Cir. 2003); *Brown*, 53 S.W.3d at 306; *Good Shepherd*, 306 S.W.3d at 837, 838.

**B.** The District failed to establish redressability with respect to either its putative procedural claim or substantive claim. And because "[a] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought," *Bonham State Bank*, 907 S.W.2d at 467; *Hardee*, 2008 WL 2116251, at *1, that observation forms a basis for dismissal of the District's suit in full.

**1.** To the extent the live petition articulates it, the District's procedural claim is that it was injured by Post Oak's failure, in alleged violation of the second sentence of District Rule 8.1, to give the District notice of its application with the Commission for a landfill permit. CR.1200. In connection with that putative claim, the District alleged that it learned from third parties of Post Oak's December 2011 application for a land-use compatibility determination in February 2012. CR.1197, 1198. The District further alleged that, the following month, it sent the Commission comments

32

on that application and a report from its geologic consultant. CR.1198–99. Similarly, although the District alleged that "at no time did Post Oak provide notice to the District of its application for a landfill permit, in accordance with District Rule 8.1," the District admits that it timely submitted its comments at a public meeting on that application. CR.1200.

After laying out these facts, the District's live petition requested a declaration "that disposal of solid waste at the site proposed by Post Oak violates the District's Rule 8.1." CR.1200–01. Its prayer for relief sought, in full, rendition of judgment:

> 1. declaring that operation of a landfill at the location proposed by Defendant Post Oak Clean Green, Inc. on the outcrop of the Upper Wilcox Aquifer violates District Rule 8.1; and
>
> 2. awarding the District its costs and attorneys' fees, expert witness fees and postjudgment interest on those fees.
>
> 3. granting the District such other relief, including supplemental and injunctive relief, to which it may show itself entitled.

CR.1202–03.

For at least two reasons, that requested relief would not redress any injury flowing from Post Oak's alleged failure to provide formal notice. First, it is undisputed that the District received actual notice of Post Oak's applications in time for it to prepare and submit comments to the Commission, so a judicial decree regarding the provision of notice would give the District no relief beyond what it has already obtained outside of court. Second, unlike the original petition, the District's live petition requested no relief that could arguably redress the alleged notice failure; the requested declaration spoke in terms of the substantive claim alone. CR.1202–03; *cf.* CR.13 (original petition requesting both a declaration that Post Oak violated Rule

33

8.1's notice requirement and an award of penalties for that alleged violation); *see Kinney v. Palmer*, No. 04-07-00091-CV, 2008 WL 2515696, at *2 (Tex. App.—San Antonio June 25, 2008, no pet.) (mem. op.) (explaining that an amended petition "completely replaces and supersedes the previous pleading").

In light of this difference between the original and amended petitions, the Court could correctly determine that the District dropped its procedural claim entirely. But even assuming the live petition contains a sufficient vestige of that claim to keep it in the case, the District failed to establish redressability with respect to it, requiring its dismissal.

**2.** As already noted, the District's substantive claim is based on the injury that would allegedly occur if Post Oak were permitted to construct and operate the proposed landfill. CR.1193, 1195, 1201. On the merits of that claim, Post Oak asserts that the proposed landfill would not, in fact, violate the third sentence of Rule 8.1. *See* CR.1017. But in this declaratory-judgment suit, the courts should not reach the merits because the District's substantive claim, like its putative procedural claim, should be dismissed for lack of redressability if the Court concludes that it is ripe and not redundant.

Even assuming the District is correct that the third sentence of Rule 8.1 would apply to Post Oak's proposed landfill, it could not, as a matter of law, actually prevent Post Oak from constructing and operating the landfill if it obtains the requisite permits, including the permit it has requested from the Commission. As explained above, the Commission has broad authority over water quality in general and in the context of solid-waste management in particular. *See supra* pp. 3–7. Moreover, the

34

Commission's authority is superior to that of governmental entities such as the District, which function under Commission supervision and whose powers focus on the spacing of, and production from, water wells. *See supra* pp. 8–12; *see also Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (noting that "[a]n agency may adopt only such rules as are authorized by and consistent with its statutory authority"); *Grand Lodge of the Order of the Sons of Hermann in Tex. v. Curry*, 108 S.W.2d 574, 576 (Tex. Civ. App.—San Antonio 1937, writ ref'd) (confirming that "a water improvement district is a creature of statute and only has such jurisdiction as is expressly given it by statute, or is implied as a necessary incident to the jurisdiction so expressly given").

Especially as Texas water resources grow more scare and disputes about access to groundwater increase, water conservation districts' powers are important. But they neither overlap with nor diminish the Commission's authority to grant permits for landfills. A declaration that any Commission permit that might issue for Post Oak's proposed landfill would authorize activity that Rule 8.1 prohibits could provide redress on the District's substantive claim only if the Court concluded that a District rule could trump a Commission permit. But the relevant statutes compel the opposite conclusion.

For that reason, the District's reliance below on section 361.039 of the Solid Waste Disposal Act, which provides that the Act "does not diminish or limit the authority of the commission, the Department of State Health Services, or a local government in performing the powers, functions, and duties vested in those governmental entities by other law," was misplaced. *See* CR.1159. As an initial matter,

the District does not fall within the Act's definition of a "[l]ocal government." *See* Tex. Health & Safety Code §§ 361.003(17), 361.165(a); Act of May 29, 1997, 75th Leg., R.S., ch. 1066, §§ 3, 5, 1997 Tex. Gen. Laws 4059, 4059. But more importantly, no law vests the District with any "powers, functions, [or] duties" that could interfere with the Commission's forthcoming decision about whether to grant Post Oak a landfill permit.

The District is, of course, free to tell the Commission why it believes a permit should not issue. It has already done so through its comments, and it may reiterate its concerns at the contested-case hearing, which is currently set to begin early next year. That input may influence the Commission's ultimate permitting decision. But under Texas law, the District's power is generally inferior to that of the Commission, and the District has no authority with respect to waste management at all. Accordingly, a judicial decision that the third sentence of Rule 8.1 applies to Post Oak's proposed landfill could not prevent the Commission from issuing a permit that allows the project to go forward, and that observation requires dismissal of the District's substantive claim for lack of redressability.

## III. The District's Substantive Claim Is Barred Under The Doctrine Of Exclusive (Or, Alternatively, Primary) Jurisdiction.

**A. 1.** An agency has exclusive jurisdiction when the Legislature gives it sole authority to make the initial determination in a dispute. *Subaru*, 84 S.W.3d at 221; *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). Exclusive jurisdiction may be established through: (1) an "express legislative indication," *Thomas v. Long*, 207

S.W.3d 334, 340 (Tex. 2006); (2) a statute authorizing a governmental entity to administer rights unknown at common law, *id.* at 341–42; or (3) the creation of a "pervasive regulatory scheme" reflecting legislative intent that an agency have the sole power to make an initial determination or that the regulatory process is the exclusive means of remedying the problem to which the regulation is addressed. *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004); *Subaru*, 84 S.W.3d at 221; *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 859 (Tex. App.—Austin 2009, no pet.).

Pervasive regulatory schemes provide detailed legislative instructions for how agencies should resolve disputes or make initial determinations in specialized areas of the law. They exist in a variety of contexts. *See, e.g.*, *Entergy*, 142 S.W.3d at 322–23 (discussing the Public Utility Regulatory Act, which "establish[es] a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable," Tex. Util. Code § 31.001(a)); *In re Crawford & Co.*, 458 S.W.3d 920, 923–24 (Tex. 2015) (discussing the Workers' Compensation Act, which "designates the Department of Insurance as the administrative agency responsible '[for overseeing] the workers' compensation system of this state' and establishes the Division of Workers' Compensation within the Department to 'administer and operate' that system" (quoting Tex. Labor Code § 402.001)); *Janek v. Gonzalez*, No. 03-11-00113-CV, 2013 WL 1748795, at *1, *5–6 (Tex. App.—Austin Apr. 17, 2013, no pet.) (mem. op.) (discussing the Supplemental Nutrition Assistance Program, under which the Texas Health and Human Services Commission oversees the distribution of food stamps, *see, e.g.*, Tex. Hum. Res. Code §§ 33.0006, 33.002).

Assessment of whether a claim falls within or outside of an agency's exclusive jurisdiction "does not depend on the label of the cause of action asserted" by a party seeking to establish subject-matter jurisdiction. *Crawford*, 458 S.W.3d at 926. Rather, "courts must look at the substance of the claim." *Id*. "A party cannot circumvent an agency's exclusive jurisdiction by filing a declaratory-judgment action if the subject matter of the action is one 'over which the Legislature intended the [administrative agency] to exercise exclusive jurisdiction.'" *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006) (quoting *Thomas*, 207 S.W.3d at 342).

In applying these principles, the Texas Supreme Court makes a "close inspection" of declaratory-judgment claims and focuses on the "real point of contention," rather than how the plaintiff has "attempt[ed] to cast" its claims. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 625, 626 (Tex. 2007). The Court looks to whether a claim broadly "arise[s] out of" conduct within the scope of an agency's exclusive jurisdiction. *Crawford*, 458 S.W.3d at 928; *see id*. at 927–28 (holding that the plaintiffs' claims regarding the investigation, handling, and settling of claims for workers' compensation benefits fell within an agency's exclusive jurisdiction over such disputes); *cf. BSR Water Co.*, 190 S.W.3d at 756 (holding that while the Texas Water Code made the Commission responsible for granting certificates of convenience and necessity, it did not give the Commission exclusive jurisdiction to resolve breach-of-contract disputes).

When a party files a claim within an agency's exclusive jurisdiction, it must generally await the administrative proceedings' completion, exhaust its administrative remedies, and seek judicial review in the manner designated by statute. *Cash Am.*, 35

S.W.3d at 15. Until then, "the trial court lacks subject matter jurisdiction and must dismiss the claim[]." *Subaru*, 84 S.W.3d at 221.

**2.** The doctrine of primary jurisdiction applies "when a court and an agency have concurrent original jurisdiction over a dispute." *Cash Am.*, 35 S.W.3d at 18. It "operates to allocate power between courts and agencies when both have authority to make initial determinations." *Subaru*, 84 S.W.3d at 221.

Primary jurisdiction respects the special competence of administrative agencies, which are typically best positioned to fulfill essential legislative objectives and maintain decisional uniformity in areas that involve technical and intricate questions of fact and thus require specialized knowledge and experience. *Cash Am.*, 35 S.W.3d at 18. A trial court "should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Subaru*, 84 S.W.3d at 221; *see In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403–04 (Tex. 2007) (finding each of these requirements satisfied because the Public Utility Commission "is staffed with experts who routinely consider the validity and enforceability of [telephone] interconnection agreements" and application of the primary-jurisdiction doctrine would avoid "[c]onflicting jury verdicts and rulings by different courts" in similar situations).

**B. 1.** In addressing the question of exclusive jurisdiction here, the Court should ask: (a) whether the relevant statutory provisions give the Commission exclusive jurisdiction to determine whether proposed Type I landfill projects may go forward and, if so; (b) whether the substance of the District's declaratory-judgment claim (regardless of how the District has characterized it) falls within the Commission's exclusive jurisdiction. *See Crawford*, 458 S.W.3d at 926–28. As explained below, the answer to each question is "yes."

**a.** The Commission has exclusive jurisdiction over state permitting of Type I municipal solid waste landfills. As the Third Court of Appeals has observed, "[t]he granting or denying of an application under the [Solid Waste Disposal] Act is an executive function committed exclusively to the Commission." *Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 258 (Tex. App.—Austin 1994, pet. withdrawn); *see also Juliff Gardens, L.L.C. v. TCEQ*, 131 S.W.3d 271, 278–79 & n.4 (Tex. App.—Austin 2004, no pet.) (noting that the Solid Waste Disposal Act "empower[s] the Commission with the [landfill-]permitting function" and rejecting the Commission's exclusive-jurisdiction argument only because the plaintiff's "request for declaratory relief concerns *only* the constitutionality of [a provision of the Act] and does not ask the district court to make any determination regarding the proper characterization of [a topographical feature of a proposed landfill site]," *see id.* at 275 n.3); *McDaniel v. Tex. Natural Res. Conserv'n Comm'n*, 982 S.W.2d 650, 653 (Tex. App.—Austin 1998, pet. denied) (noting that the Solid Waste Disposal Act gives the Com-

40

mission "general authority over municipal solid waste, allowing the agency to control and manage all aspects of municipal solid waste by all practical means as long as such methods are consistent with its powers and duties under the Act").

Moreover, the Legislature authorized the Commission to grant or deny the specific type of permit Post Oak has requested, creating a pervasive regulatory scheme governing the minutiae of the permitting process and mandating numerous groundwater safeguards. *See supra* pp. 3–6 (citing the statutory provisions that charge the Commission with controlling all aspects of municipal solid waste management and describe the breadth of the Commission's authority in this area); *see also id.* at 6–7 (citing the large body of Commission rules that govern applications for municipal solid waste landfill permits and reflect the Commission's careful attention to groundwater issues); Tex. Water Code §§ 26.0136, 26.023 (granting the Commission "sole and exclusive authority to set water quality standards for all water in the state" and making it "the agency with primary responsibility for implementation of water quality management functions"). In short, the regulatory scheme at issue here is no less "pervasive" than the others that Texas courts have recognized.

**b.** Once again, although the District's substantive claim depends on Rule 8.1 in seeking to prevent construction and operation of Post Oak's proposed landfill, it is expressly tied to the Commission's authority to issue a permit. CR.1193 (live petition complaining of "[Post Oak's] pursuit of a landfill permit [from the Commission], proposing construction and operation of a landfill in Guadalupe County in violation of the District's Rule 8.1"); *see* 1.RR.5 (statement of the District's trial counsel that "were it to be permitted" by the Commission, Post Oak's proposed landfill would

41

violate Rule 8.1). Because obtaining a permit from the Commission is a necessary (albeit not sufficient, *see* CR.109–11) condition for construction and operation of Post Oak's proposed landfill, and because the Commission may decline to issue a permit after considering public comments and submissions by the District and other interested parties at the upcoming contested case hearing, the Commission is fully empowered to give the District the substantive relief it seeks through this lawsuit. That observation deprives the trial court of subject-matter jurisdiction over this matter within the Commission's exclusive jurisdiction. *See Sw. Bell Tel.*, 235 S.W.3d at 625–26.

**2.** If the Commission does not have exclusive jurisdiction over the substance of the District's claim, it has primary jurisdiction. Recognizing the icy reception that most landfill proposals receive from local authorities, the Legislature gave the Commission statewide authority to determine which proposals should be permitted after hearing the views of interested persons. *See, e.g.*, Tex. Health & Safety Code §§ 361.0641, 361.067, 361.083(a). Especially when coupled with the Commission's rules establishing the detailed requirements for a permit application, that legislative framework necessitates careful and comprehensive analysis by an agency responsible for making determinations in the interest of the State as a whole.

The analysis is highly technical. At almost every turn, it calls upon the specialized knowledge of Commission experts. *See, e.g.*, 30 Tex. Admin. Code § 330.63(a) (ensuring the Commission's ability to review a design engineer's site development plan, which must include "a detailed design with supporting calculations and data

for the development and operation of a solid waste site," *id.* § 330.3(140)). Moreover, resolution of permitting issues by the Commission, rather than local courts, ensures statewide decisional uniformity in an area that would otherwise be susceptible to local bias. For each of these reasons, the District's substantive claim, if it does not fall within the Commission's exclusive jurisdiction, fits comfortably within the doctrine of primary jurisdiction.

**C.** Neither the trial court's reasoning nor the District's assertions alter the analysis. In response to the Commission's arguments regarding exclusive or primary jurisdiction, the District asserted below that "[t]here is no statute giving [the Commission] the exclusive authority (or any authority) to determine the applicability of the District's rules. Nor does [the Commission] have any expertise that is greater than this Court's in determining the applicability of the District's rule." CR.1158. But as already explained, the District could obtain a declaration in this suit regarding the applicability of Rule 8.1 only through an impermissible advisory opinion. The only way that would not be true is if the relevant statutes gave the District power to override a Commission permit. Because they do not, the District's present suit could be nothing other than an effort to block the Commission's issuance of Post Oak's requested permit. That effort falls squarely within the Commission's regulatory purview and will require technical expertise.

In an effort to show that the Commission's authority is less pervasive than claimed, the District cited section 361.154 of the Solid Waste Disposal Act, which allows counties to issue licenses for solid waste facilities, and section 361.161 of the Act, which states that a Commission permit is not required when a county permit

43

has already issued. CR.1159. But the District failed to note that the Legislature expressly empowered the Commission to preclude a county's exercise of this authority. *See* Tex. Health & Safety Code §§ 361.154(a) (beginning with "[e]xcept as provided by Section[] 361.151 . . ."), 361.151(c) (providing that "[t]he commission, by specific action or directive, may supersede any authority granted to or exercised by a county under this chapter"); *see also id.* § 361.154(b) (reflecting that county rules regarding solid-waste management must be both "(1) compatible with and not less stringent than those of the commission; and (2) approved by the commission").

To the extent the District attempted to question the Commission's exclusive or primary jurisdiction over the permitting of hazardous waste management facilities, *see* CR.1159–60, that effort could likewise not help it here. Post Oak is seeking a permit for a municipal solid waste landfill, not a hazardous waste management facility. CR.77, 1193; *see* 30 Tex. Admin. Code § 330.61(b)(1) (providing that "[m]unicipal solid waste facilities may not receive regulated hazardous waste"); *supra* p. 14 (explaining why a Type I municipal solid waste landfill permit could allow a landfill to accept certain special waste); *cf.* Tex. Health & Safety Code § 361.095 (governing permit applications for hazardous, rather than municipal, waste management facilities).

And to the extent the trial court construed the Solid Waste Disposal Act's provisions regarding hazardous waste management facilities, unlike those regarding solid waste generally, as providing a clear indication of legislative intent to exclude local interference with respect to hazardous waste management, its reasoning depends on the premise that the Legislature authorized the District to have a say in

issues regarding solid waste management. CR.1186–88. But once again, that premise finds no support in the statutes.

Finally, that Post Oak is required to seek additional permits, *see* CR.1162, does not diminish the Commission's role in ensuring that the statewide standards for issuance of a Type I municipal solid waste landfill permit have been satisfied. If those requirements are not satisfied, the project may not go forward no matter what other permits Post Oak might obtain.

## PRAYER

The Court should reverse the trial court's order denying the Commission's plea to the jurisdiction and render judgment dismissing the District's suit for lack of subject-matter jurisdiction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1896
Fax: (512) 370-9191

SCOTT A. KELLER
Solicitor General

/s/ Bill Davis
BILL DAVIS
Assistant Solicitor General
State Bar No. 24028280
Bill.Davis@texasattorneygeneral.gov

NANCY ELIZABETH OLINGER
CYNTHIA WOELK
Assistant Attorneys General

45

## CERTIFICATE OF SERVICE

On September 17, 2015, this brief was served via CaseFileXpress on lead counsel for the District (Marisa Perales / FREDERICK, PERALES, ALLMON & ROCKWELL, P.C. / 707 Rio Grande, Suite 200 / Austin, Texas 78701 / marisa@LF-Lawfirm.com) and Post Oak (Christopher Dodson / BRACEWELL & GIULIANI / 711 Louisiana St., Suite 2300 / Houston, Texas 77002 / chris.dodson@bgllp.com).

           /s/ Bill Davis
           BILL DAVIS

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 12,049 countable words.

           /s/ Bill Davis
           BILL DAVIS

# Appendix

CAUSE NO. 14-0863-CV

| | | |
|---|---|---|
| GUADALUPE COUNTY | § | IN THE DISTRICT COURT |
| GROUNDWATER CONSERVATION | § | |
| DISTRICT, | § | |
| Plaintiff, | § | |
| v. | § | GUADALUPE COUNTY, TEXAS |
| | § | |
| POST OAK CLEAN GREEN, INC., | § | |
| Defendant. | § | 25TH JUDICIAL DISTRICT |

## ORDER

Before the Court is the Texas Commission on Environmental Quality's (TCEQ) Plea to the Jurisdiction. Having considered the Plea to the Jurisdiction, the responses thereto, and the other relevant papers on file with the Court, it is hereby ORDERED that TCEQ's Plea to the Jurisdiction is:

_____ Granted:   All Plaintiff's claims are dismissed for lack of jurisdiction.

__X__ Denied:

Signed this ___ day of ___June___, 2015.

THE HONORABLE W.C. KIRKENDALL
JUDGE PRESIDING